**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| KEITH JAMES FLYNN, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No.1:10-cv-1569-TWP-TAB |
| ) | |
| MORGAN CO. SHERIFF ) | |
|  ROBERT GARNER, ) | |
|  JAIL COMMANDER DAVE ROGERS, ) | |
|  JAILER SHANE NORRIS, ) | |
|  JAILER DIANA DOE, JAILER JEREMY ) | |
|  LONG, JAILER MS. BRAY, ) | |
| ) | |
| Defendants. ) | |

**Entry Granting Motion for Summary Judgment**

Plaintiff Keith James Flynn ("Mr. Flynn") was incarcerated at the Morgan County Jail ("Jail") at all times relevant to this complaint. This action was removed from the Morgan Superior Court. Mr. Flynn alleges that the defendants, Sheriff Robert Garner, Jail Commander Dave Rogers, Jailers Shane Norris, Diana Doe, Jeremy Long, and Ms. Bray, were deliberately indifferent to his serious medical needs. The defendants seek resolution of Mr. Flynn's claims through the entry of summary judgment.

For the reasons explained in this Entry, the defendants'= motion for summary judgment [Dkt. 48] is **granted.**

**I.  Summary Judgment Standard**

A motion for summary judgment must be granted Aif the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Rule 56(a) of the *Federal Rules of Civil Procedure*. A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* "The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

## II. Discussion

### A. Undisputed Facts

On the basis of the pleadings and the expanded record, and specifically on the portions of the record which comply with the requirements of Rule 56(c), the following facts, construed in the manner most favorable to Mr. Flynn as the non-movant, are undisputed for purposes of the motion for summary judgment.

Mr. Flynn arrived at the Morgan County Jail on April 30, 2009. Mr. Flynn reported that he was a diabetic and was taking several medications. His medications were noted and he received them starting the next day, May 1, 2009. At approximately 3:15 p.m. on May 1, 2009, Mr. Flynn was seen by the medical staff for a swollen thumb. He was given Bactrim (antibiotic, per www.nlm.nih.gov), Metformin (for diabetes, per www.nlm.nih.gov) and Metoprolol (for high blood pressure, per www.nlm.nih.gov).

Later that afternoon and evening, Mr. Flynn complained that he was in

severe pain. Mr. Flynn asked jailer Shane Norris for Tylenol. Norris replied "Listen to him crying for a Tylenol." Mr. Flynn also told jailer Diana Doe that he was in pain. When the night shift of Jail staff arrived, Mr. Flynn reported to jailers Jeremy Long and Ms. Bray that his pain was getting worse. He showed them his enlarged thumb and a red streak going from his thumb up his arm. Jailer Long contacted the nursing staff.

At 3:20 a.m., Mr. Flynn was seen by medical staff. He reported that his thumb was much worse. He was assessed with a red streak running from his thumb down his arm. Jail Commander Rogers was called. Rogers instructed that Mr. Flynn be taken to the emergency room. Mr. Flynn was taken to the Morgan Hospital and Medical Center at 4:00 a.m. At the hospital, Mr. Flynn reported that the onset was the day before. Mr. Flynn was diagnosed with a felon (infection of the fingertip) on the right thumb and a paronychia (infection in the skin around a fingernail or toenail) on the right middle finger. An incision was made on the middle finger and an abscess was drained on the right thumb. Mr. Flynn's condition was then noted to be stable and improved. Mr. Flynn was released to the Jail with a prescription for antibiotics (Bactrim and Augmentin) and the narcotic pain reliever Lortab. He was also given information regarding the treatment of his conditions. A follow-up appointment was scheduled for May 4, 2009. There were no restrictions placed on his activities.

Jail staff returned Mr. Flynn to the hospital for his follow-up appointment on May 4, 2009. Mr. Flynn reported that the redness and swelling were significantly decreased. There was no drainage noted on the wound. He was released without

restrictions. The emergency room physician prescribed Lortab but the Jail physician substituted it with the non-narcotic Tramadol and 600 mg Ibuprofen. Mr. Flynn objected to this substitution of his medication, but eventually took the non-narcotic medications prescribed by the Jail physician. The Jail physician followed up with Mr. Flynn the next day, May 5, 2009.

On June 3, 2009, a notice was posted at the Jail stating, "Do not drink the water until further notice." It also stated that the County Board of Health advised that the water was fine for showers and washing hands, but that the inmates were to use provided bottled water for drinking. The notice was effective at 3:30 pm on June 3, 2009, until the afternoon of June 5, 2009. Mr. Flynn was not given bottled water until the evening of June 3, and he had to drink non-bottled water on two occasions.

For several hours on one evening, Mr. Flynn was out of toilet paper and twice had to use a wash cloth to wipe himself. He was given toilet paper the following morning.

### B. Analysis

Mr. Flynn was a pretrial detainee at all relevant times. Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Although the Eighth Amendment applies only to convicted persons, pretrial detainees . . . are entitled to the same basic protections under the Fourteenth Amendment's due process clause,

and we apply the same deliberate indifference standard in both types of cases." *Rosario v. Brawn*, 670 F.3d 816, 820-21 (7th Cir. 2012) (internal quotation omitted).

"[A] successful § 1983 deliberate indifference claim requires [the plaintiff] to prove that (1) the harm that befell the prisoner [is] objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." *Id.* (internal quotation omitted). As to the first element, "[a]n objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer,* 680 F.3d 1013, 1018 (7th Cir. 2012) (internal quotation omitted). The defendants do not dispute that Mr. Flynn had an objectively serious medical condition.

As to the second element, a jail official is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Miller, ex rel Bertram v. Tobiasz*, 680 F.3d 984, 989 (7th Cir. 2012) (internal citations and quotations omitted). For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain v. Wood,* 512 F.3d 886, 895 (7th Cir. 2008) (internal quotation omitted); *see also Johnson v. Doughty,* 433 F.3d 1001,

1013 (7th Cir. 2006).

Mr. Flynn claims that he had an infection on his right thumb and that the defendants failed to provide adequate and timely treatment, causing him to suffer unnecessarily with severe pain. He also alleges that Jail staff refused to provide him with treatment that was prescribed by the hospital physician. He alleges that the defendants' deliberate indifference to his serious medical needs resulted in permanent numbness in his thumb and fingers on the right hand and partial loss of range of motion.

As far as the treatment provided Mr. Flynn in May of 2009 is concerned, Mr. Flynn has presented no evidence suggesting that it was inadequate. He argues vehemently that his treatment was delayed, that he suffered from pain for several hours before he was seen by medical personnel. A delay in providing medical treatment may constitute deliberate indifference, depending on "the seriousness of the condition and the ease of providing treatment." *Smith v. Knox County Jail,* 666 F.3d 1037, 1040 (7th Cir. 2012) (internal quotation omitted); s*ee also Grieveson v. Anderson,* 538 F.3d 763, 778-80 (7th Cir. 2008) (guards could be liable for delaying treatment for painful broken nose by almost two days); *Edwards v. Snyder,* 478 F.3d 827, 831 (7th Cir. 2007) (two day delay in treatment of exposed bone fractured finger for no medical reason stated a claim for deliberate indifference); *Gutierrez v. Peters*, 111 F3d 1364, 1374 (7th Cir. 1997) (dismissed for failure to state a claim because a four day wait to see a doctor for an infected cyst deemed not that severe was not unreasonably long).

Mr. Flynn's allegations and the medical records indicate that the conditions

on his right thumb and finger progressed in severity over time. He was first seen by medical staff on May 1, 2009, at 3:15 p.m. He was given an antibiotic for a "swollen thumb." Sometime later that day, Mr. Flynn asked Jailers Norris and Diana for Tylenol because he was in severe pain. He contends that they mocked him about "crying for a Tylenol." He continued to ask for Tylenol when the next shift came on at the Jail. He showed Jailers Long and Bray the infection and the red streak going up his arm, and stressed that the pain was getting worse. Mr. Flynn alleges that Jailer Long began attempting to contact the nursing staff as soon as he finished his rounds. Mr. Flynn alleges that Long made several calls. Mr. Flynn's complaints were not being ignored at this point. By 3:20 a.m., Mr. Flynn was seen by medical staff. Commander Rogers was also contacted and he directed that Mr. Flynn be taken to the emergency room.

There is no evidence showing what the earlier shift of jailers, Norris and Diana, knew about Mr. Flynn's condition, other than he was experiencing pain in his thumb and was asking for Tylenol. Mr. Flynn had been seen by medical personnel earlier that afternoon for a swollen thumb, and no pain reliever had been prescribed. Norris and Diana had not viewed any infection or red streaks on Mr. Flynn's arm. Taken as true, Norris' comment about Mr. Flynn "crying for a Tylenol" was unprofessional and insensitive. The court does not find, however, that a genuine issue of fact exists as to whether Norris and Diana had the requisite knowledge of a serious medical need at that time. An inference cannot be drawn that these defendants were aware of a substantial risk of serious harm. Therefore, these circumstances do not rise to the level of deliberate indifference.

Taking Mr. Flynn's allegations as true, by the time Jailers Long and Bray saw the infection and red streak, Mr. Flynn's condition and pain were more severe. However, the undisputed evidence shows that Long and Bray responded in a reasonable manner to Mr. Flynn's complaints. The jailers contacted medical staff and by 4:00 a.m. Mr. Flynn was being treated in a hospital emergency room. "Although an inmate is not entitled to demand specific care and is not entitled to the best care possible, he is entitled to reasonable measures to meet a substantial risk of serious harm." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011). During the twelve hour period of Mr. Flynn's symptoms, he was seen by medical staff at the Jail on two occasions and was treated at a local hospital. He was provided antibiotics initially and as the swelling and infection increased, incisions were made and the infection drained. Jail staff took Mr. Flynn back to the hospital two days later as requested by the hospital. There were no reported complications in the healing process. Mr. Flynn received reasonable care.

Mr. Flynn also contends that the fact that he was not given a prescription narcotic pain reliever prescribed by the hospital physician demonstrates deliberate indifference. The Jail physician did not permit Mr. Flynn to have a narcotic medication. Instead, he substituted a prescription for a different pain medication, Tramadol, in addition to 600 mg of Ibuprofen. The Seventh Circuit Court of Appeals has recently addressed this very claim. "[A] prisoner is not entitled to receive unqualified access to healthcare." *Holloway v. Delaware County Sheriff*, No. 12-2592, 2012 WL 5846289, *8 (7th Cir. Nov. 20, 2012) (jail physician was not deliberately indifferent when he substituted Ibuprofen and Extra Strength Tylenol

for narcotic pain medication to manage pain) (internal quotation omitted). "There is not one proper way to practice medicine in prison, but rather a range of acceptable courses based on prevailing standards in the field." *Id.* (internal quotation omitted). There has been no showing here that the Jail physician's decision was such a substantial departure from accepted professional standards as to demonstrate that he did not base the decision on those standards. *See id.* This is not an instance in which Mr. Flynn was denied all pain medication. He was simply not permitted to have narcotic medication. Jail officials have a legitimate interest in restricting the use of narcotics by inmates. There is no evidence that the medications provided failed to manage Mr. Flynn's pain. Nor is there evidence that the Jail physician was aware that what he prescribed would be insufficient to alleviate Mr. Flynn's pain. The substitution of medications under these circumstances did not constitute deliberate indifference. *Id.*

Mr. Flynn's allegations of delayed treatment do not rise to the level of a constitutional violation. "We examine the totality of an inmate's medical care when determining whether prison officials have been deliberately indifferent to an inmate's serious medical needs." *Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000). The totality of care facilitated by the Jail staff was appropriate and sufficient, negating any inference of deliberate indifference.[1]

---

[1] To the extent Flynn alleges an official capacity claim against Sheriff Garner, he has presented no evidence showing that the Sheriff had a custom or policy of refusing to provide reasonable medical care to its inmates. *See Monell v. Dep't of Social Services,* 436 U.S. 658, 694 (1978). The Sheriff is entitled to summary judgment as to any official capacity claim. *See Holloway,* 2012 WL 5846289 (Sheriff in his official capacity entitled to summary judgment because plaintiff failed to present evidence that alleged deprivation was result of existing policy rather than an isolated incident).

Mr. Flynn next argues that he was denied basic human needs on June 3, 2009, when he was denied bottled water. He does not allege that any defendant willfully refused to give him bottled water at any particular time. Mr. Flynn's allegations that he did not have bottled water for a matter of hours does not rise to the level of an extreme deprivation as required by the Eighth Amendment. *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001) ("extreme deprivations are required to make out a conditions-of-confinement claim")(internal quotation omitted). This unfortunate, but temporary, circumstance does not constitute a deprivation of constitutional proportions.

Mr. Flynn also asserts that his basic human needs were violated when he did not have toilet paper in his cell for one night and had to use a wash cloth instead. The defendants argue that even if true, such a temporary delay in providing personal hygiene items does not violate the constitution. The court agrees. *See Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994) (24 hour delay in providing hygiene supplies is not the type of extreme deprivation required to establish an objective violation of the Eighth Amendment).

### III. Conclusion

Mr. Flynn has not identified a genuine issue of material fact as to his claims of deliberate indifference. Accordingly, the defendants' motion for summary judgment [Dkt. 48] must be **granted.**

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 12/06/2012

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

**Distribution:**

**Keith James Mr. Flynn**
**3100 S. Walnut Street Pike, Apt. B-169**
**Bloomington, IN 47401**

**All Electronically Registered Counsel**